## THIRD DEPARTMENT, NOVEMBER, 1974

## (November 7, 1974)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ROBERT J. JACKSON, Appellant.— Appeal from a judgment of the County Court of Broome County, rendered July 9, 1973, convicting defendant, on his guilty plea, of the

crime of burglary in the second degree. The defendant entered his guilty plea only after a motion to suppress his confession and certain items of physical evidence seized from his apartment had been denied. As the basis for its denial of the motion, the trial court found that a legal entry had been made into the defendant's apartment by the police and that the defendant had voluntarily signed a consent to a search of his apartment and thereby waived any claim of illegality. It also found that the defendant's written confession had been voluntarily made after he had received and understood the warnings required by *Miranda* v. *Arizona*, (384 U. S. 436). In making its decision, the trial court obviously placed much reliance on the testimony of Detectives Metera and Rusin of the Binghamton Police Department, and, therefore, a summary of this testimony is in order. These two men were the chief investigators in this matter, and they testified that they first went to the defendant's apartment on the afternoon of August 30, 1972 to question him concerning a stolen camera which had allegedly been purchased from him. When there was no answer at his apartment door, they spoke with the landlady who opened the door with a key and allowed them to look inside. They then proceeded to ascertain that the defendant was not there, but made no search of the premises. Afterward, they were given a key to the defendant's apartment by the landlady and waited to no avail in an adjacent apartment until midnight for the defendant's return. The next morning, according to further testimony of the detectives, they returned to the defendant's apartment at approximately 6:30 A.M. so that they could talk to him before he left for work. When Detective Metera knocked on the apartment door, it opened fortuitously, and the defendant invited them to enter after they had identified themselves and asked to speak with him. Once inside, Detective Rusin noticed a "Nikon" camera in plain view in an open drawer of a vanity and, because he knew such a camera had been taken in a burglary then under investigation, he checked its serial number and determined that it was, in fact, stolen property. At that time, Detective Metera produced a consent to search form which the defendant voluntarily signed and after which he was taken to the police station. Thereafter, the detectives went back to the apartment to look for other items of stolen property, and they returned to the station at approximately 10:30 A.M. The defendant was then informed of his *Miranda* rights, as had been done orally at his apartment earlier that morning, and he freely signed a waiver of these rights and a statement implicating himself in a burglary. When a second statement was prepared, he asked for an attorney and, upon conferring with his counsel, refused to make any further statements. On this appeal, the defendant contends: (1) that the prosecution must sustain a heavy burden to establish that the consent given by him to search his apartment was voluntary; (2) that the prosecution has not sustained the burden; (3) that all statements given by him were the product of a prior illegal search and seizure and should have been suppressed; and (4) that he was denied access to counsel, despite his requests prior to the commencement of his interrogation by the police, and, therefore, all his subsequent statements, both oral and written, were inadmissible. While conceding that the prosecution must sustain a heavy burden to establish the voluntariness of the defendant's consent to the search (cf. *People* v. *Whitehurst*, 25 N Y 2d 389), we nevertheless find the defendant's remaining contentions to be without merit. Although there was conflicting testimony presented at the suppression hearing, the trial court chose to believe the investigating officers as to the circumstances surrounding the consent, the search, the interrogation and the arrest, and we cannot say on this record that their testimony was not credible. Moreover, the testimony of the defense wit-

nesses was equivocal and inconsistent. For example, the landlady was not sure as to how long the detectives were in the defendant's apartment on the afternoon of August 30, and the defendant conceded that possibly his apartment door was unlatched when it opened to Detective Metera's knock on the morning of August 31. Furthermore, his testimony varied as to the content of his telephone conversation with his attorney, and he admitted that he read and understood the consent to search form and voluntarily signed it without any force or intimidation from the police (cf. *Schneckloth* v. *Bustamonte,* 412 U. S. 218). Thus, the legality of the search having been established, the defendant's subsequent statements were not the product of evidence illegally seized. Likewise, the detectives testified that the defendant was given an attorney at his first request, and, prior to his confession, the defendant signed a *Miranda* warning report stating that he did not want a lawyer at that time and was making his statement to the police of his own free will. Accordingly, the trial court was justified in finding that he was not denied access to counsel. Judgment affirmed. Staley, Jr., J. P., Sweeney, Main and Reynolds, JJ., concur; Kane, J., dissents and votes to reverse in' the following memorandum. Kane, J. (dissenting) : I would reverse the conviction obtained herein and grant the motion to suppress the evidence seized by the police. The original entry of the police into defendant's apartment was made without a warrant and with a key provided by the landlady. She could not validly consent to a search of defendant's premises (*Chapman* v. *United States,* 365 U. S. 610). Their return the next morning at 6:30 A.M. armed with a consent to search form and still in possession of a key to defendant's apartment highly suggests that their observations made the day before motivated this further investigation. However, even if there was no connection between the improper entry on August 30, 1972 and the activities which transpired the following day, I cannot conclude that the "consent to search" form executed by the defendant in his apartment at 6:48 A.M. shortly after being awakened by two police officers who confronted him with information that he was in possession of a stolen camera was, in fact, freely and voluntarily given. The burden of proof on this issue rests heavily indeed upon the People (*People* v. *Whitehurst,* 25 N Y 2d 389; *People* v. *Talbot,* 44 A D 2d 641) and was not here met. The evidence seized should be suppressed (*People* v. *Litwin,* 44 A D 2d 492). Additionally, there is a direct and obvious connection between the camera illegally seized which was later referred to in the confession of the defendant, and the indictment to which he pleaded guilty. Thus, the confession, being directly derived from the prior illegal acts of the police, became inadmissible.